FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

97 JAN 17 PM 3:33

U.S. DISTRICT COURT
N.D. OF ALABAMA

JAMES L. BUTLER, JR.,       ]
                            ]
    Plaintiff(s),            ]
                            ]
vs.                          ]    CV-94-N-2046-NE
                            ]
JEAN PAGE, et al.,           ]
                            ]
    Defendant(s).            ]

ENTERED
JAN 17 1997

**Memorandum of Opinion**

## I.   Introduction.

The plaintiff, James L. Butler, Jr. ("Mr. Butler") brings this action under 42 U.S.C. § 1983 for equitable relief against defendants Nancy Gaines ("Ms. Gaines"),[1] Edward Blair ("Mr. Blair"),[2] Milton Moss ("Mr. Moss"),[3] Gilbert Kendrick ("Mr. Kendrick"),[4] Robert Norris ("Mr. Norris"),[5] the Alabama State Bar Association (the "Alabama Bar"), and the Huntsville-Madison County Bar Association (the "Huntsville-Madison Bar").[6] The Huntsville-Madison

---

[1] Ms. Gaines is an attorney who allegedly assisted in the investigation of Mr. Butler's disciplinary matters.

[2] Mr. Blair is an attorney who allegedly assisted in the investigation of Mr. Butler's disciplinary matters.

[3] Mr. Moss is the Assistant General Counsel for the Alabama Bar.

[4] Mr. Kendrick is the Assistant General Counsel for the Alabama Bar.

[5] Mr. Norris is the General Counsel for the Alabama Bar.

[6] In his original and amended complaints, Mr. Butler asserted claims pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988 for damages and equitable relief against the above defendants and Heather Haring and Jean Page. He alleged that the defendants violated his Fourth, Fifth, and Fourteenth Amendment rights, that Mr. Moss, Mr. Kendrick, Mr. Norris, the Alabama Bar, and the Huntsville-Madison Bar violated his First and Seventh Amendment rights, that the defendants violated his rights under Alabama Constitution, Article I, Sections 5, 13, and 35, and that Mr. Moss, Mr. Kendrick, Mr. Norris, the Alabama Bar, and the Huntsville-Madison Bar violated his rights under Alabama Constitution, Article I, Sections 4, 10, 11, and 25. He further asserted state law claims and sought declaratory and injunctive relief as well as compensatory and punitive damages in the amount of $25 million. In

97

Bar, the Alabama Bar, Mr. Moss, Mr. Kendrick, and Mr. Norris jointly filed a motion for summary judgment, as did Ms. Gaines and Mr. Blair, each on October 1, 1996. The motions have been briefed, and upon due consideration, the motion of the Huntsville-Madison Bar, the Alabama Bar, Mr. Moss, Mr. Kendrick, and Mr. Norris will be granted in part and denied in part and the motion of Ms. Gaines and Mr. Blair will be granted.

## II.  Undisputed Facts.[7]

The plaintiff, James L. Butler, Jr., was admitted to practice law in the State of Alabama in May of 1988. Between March 22, 1989 and May 11, 1992, the Office of General Counsel of the Alabama Bar received eight separate grievances alleging that the plaintiff had committed numerous violations of the Code of Professional Conduct (the "Code"), now the Alabama Rules of Professional Conduct (the "Rules"). The Office of General Counsel and the local grievance committee of the Huntsville-Madison Bar investigated the complaints. On July 31, 1992, formal charges were filed against Mr. Butler in eight separate cases, each alleging multiple violations of the Code. On August 18, 1992, the Disciplinary Commission of the Alabama Bar (the "Commission") suspended Mr. Butler. At Mr. Butler's request, however, a hearing on dissolution of the suspension was held on August 31, 1992,

---

an order entered on November 7, 1995, the court dismissed Mr. Butler's state constitutional and common law claims, his section 1985 and 1986 claims, his Fifth, Seventh, and Fourteenth Amendment claims pursuant to section 1983, his claims of bias in his disciplinary hearings, and his monetary claims against the Alabama Bar, the Huntsville-Madison Bar, and their agents. This left as the only viable allegations Mr. Butler's First and Fourth Amendment claims for injunctive and declaratory relief brought pursuant to section 1983. Furthermore, the court dismissed Jean Page as a party defendant in an order entered on July 12, 1996, and dismissed Heather Haring as a party defendant in an order entered on August 28, 1996.

[7] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

2

wherein the Commission modified the suspension, ordering that it would expire on November 1, 1992, unless extended by further order of the Board. On October 20, 1992, the plaintiff pled guilty to the formal charges in exchange for a six-month suspension.[8]

When a grievance is received by the Alabama Bar, it is circulated to two attorneys at the Bar who read it individually and must concur on a decision as to whether the complaint merits further action. It is common practice to inform the attorney about which a grievance is filed the name of the complainant if known. The Alabama Bar's attorneys generally meet with other individuals investigating complaints and provide direction during the course of a specific investigation. Cases under investigation are routinely and frequently discussed among the staff, including the General Counsel. Mr. Moss, Mr. Kendrick, and Mr. Norris discussed the investigations, facts, and allegations regarding the grievances filed against the plaintiff, and they discussed the action to be taken with regard to prosecutions of the grievances. Mr. Norris reviewed all files and investigations concerning Mr. Butler and provided necessary instruction to and supervised the investigators during the course of the inquiries. The General Counsel of the Alabama Bar is responsible for ensuring that the actions of its investigators and secretaries comply with the Rules of Professional Conduct during the course of an investigation.

Jean Page, secretary to the plaintiff, contacted Mr. Moss on or before the first week of February 1992, and at that time, Mr. Moss knew for whom and in what capacity Ms. Page worked. On February 26, 1992, Ms. Page wrote to Mr. Moss regarding actions of the

---

[8] While the plaintiff disputes this fact, the defendants have presented a copy of the June 4, 1996, order of the Alabama Supreme Court stating that, in effect, Mr. Butler had in fact pled guilty to the charges. *See Movants' Exhibit 13.*

plaintiff with regard to a bill of sale executed by one of the plaintiff's clients, Benton Kennedy. In that letter, she stated that Heather Haring, another of Mr. Butler's secretaries, had provided information regarding the bill of sale to Nancy Gaines. On March 18, 1992, Mr. Moss wrote to Ms. Page regarding the complaint of Kristi Renee Dunavant against Mr. Butler, asking her if she had any knowledge of or information about the matter. His letter stated that it was "a confidential request for information," a phrase which Mr. Norris considers to be a proper request by the Alabama Bar. Over a period of time, Mr. Moss had several conversations with Ms. Page regarding various grievances filed against Mr. Butler. Never during that time did Mr. Moss discuss the violation of client confidences or attorney-client confidentiality with Ms. Page, nor did he discuss the necessity that Ms. Page secure releases from clients prior to sending Mr. Moss documents from the files in the plaintiff's office. No member of the Alabama Bar received any written or oral authorization that would allow the release of confidential client information from the plaintiff's files, and no member informed Mr. Butler that the confidentiality of his law office had been breached.

One of the grievances filed against the plaintiff concerned his publication of a newspaper column entitled "Legal Bullets." The plaintiff asserts that he obtained verbal pre-approval of the column prior to its publication but cannot remember from which staff attorney he received such approval. The "Legal Bullets" column did not at any time emphasize Mr. Butler's professional experience or reputation, nor did any issue of the column undertake to give individual advice on a legal matter. Mr. Norris does not deny the possibility that Mr. Butler did in fact obtain verbal pre-approval, but he cannot specifically recall if such an event occurred.

4

The Huntsville-Madison Bar grievance committee is under the direct supervision and control of the Alabama Bar, and it meets on a regular basis to discuss pending grievances and questions the investigating attorneys during the course of particular inquiries. Members of the grievance committee act as agents for the Huntsville-Madison Bar with respect to investigation of attorney grievances and are authorized to gather information in support of their reports to the committee. The Huntsville-Madison Bar originally investigated the "Legal Bullets" grievance against Mr. Butler and determined the column to be advertising. Because the column did not conform with restrictions regarding attorney advertising set out in the Rules of Professional Conduct, the Huntsville-Madison Bar recommended that the Alabama Bar discipline the plaintiff.

The plaintiff alleges that Ms. Gaines and Mr. Blair broke into and entered his law offices to steal confidential documents and conducted unauthorized searches and seizures. Ms. Gaines is a member of the Alabama and Huntsville-Madison Bars and, at the time of the alleged incidents, was a partner in the law firm of Smith, Gaines, Gaines & Sabatini. Mr. Blair[9] was an associate attorney with the firm at that time. Ms. Gaines has served on the grievance committee of the Huntsville-Madison Bar since Mr. Butler opened his law practice. Ms. Gaines provided instruction and direction to Mr. Blair during the course of their law practice but at no time instructed or asked him to secure information from the office of the plaintiff.[10] Kathy Spears, an employee of the plaintiff, saw Mr. Blair and Ms.

---

[9] Mr. Blair is a licensed attorney admitted to practice law in the State of Alabama in 1990.

[10] Mr. Butler asserts that he has insufficient evidence to either admit or deny this statement of fact. The defendants, however, have cited evidence that establishes this fact as uncontroverted by anything but the plaintiff's own conclusory allegations.

5

Haring in the hallway of the plaintiff's law office after the office had closed. Neither the Alabama Bar nor the Huntsville-Madison Bar contacted Mr. Blair and asked or instructed him to gather evidence for any disciplinary hearing involving the plaintiff.[11]

### III. Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

---

[11] Again Mr. Butler asserts that he has insufficient evidence to either admit or deny this statement of fact. The defendants, however, have again cited evidence that establishes this fact as uncontroverted by anything other than the plaintiff's own conclusory allegations.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Celotex*, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 745 n.11(1983). However, the nonmoving party "must do more than

7

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion.

### A. First Amendment Claim.

Mr. Butler asserts that the Alabama Bar, the Huntsville-Madison Bar, Mr. Moss, Mr. Kendrick, and Mr. Norris violated his First Amendment rights when they "investigated and prosecuted a grievance based upon publication of a bi-weekly newspaper column entitled "Legal Bullets" that provided free information concerning various legal matters to the community." *Amended Complaint* at 7. The local grievance committee of the Huntsville-Madison Bar determined that Mr. Butler's column was in fact advertising that contained incorrect and misleading statements of the law, failed to include the disclaimer required

by the Alabama Rules of Professional Conduct (the "Rules") of legal advertisements, and had not been filed with the Office of General Counsel within three days of its dissemination to the public as required by the Rules of Professional Conduct.

In *Bates v. State Bar of Ariz.*, the United States Supreme Court stated that lawyer advertising is commercial speech that is protected by the First Amendment; however, that "[a]s with other varieties of speech, it follows as well that there may be reasonable restrictions on the time, place, and manner of advertising." 433 U.S. 350, 384 (1977). The Court has since clarified the standard with regard to such reasonable restrictions. Lawyer advertising "that is not false or deceptive and does not concern unlawful activities . . . may be restricted only in the service of a substantial governmental interest, and only through means that directly advance that interest." *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 638 (1985). In further defining the relationship between the means chosen to advance the governmental interest in regulating commercial speech and the interest itself, the Court has explained that the means must "fit" -- that is,

> a fit that is not necessarily perfect but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served; that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective.

*Board of Trustees v. Fox*, 492 U.S. 469, 480 (1989) (citation and internal quotation omitted).

While the Alabama and Huntsville-Madison Bars found that Mr. Butler's "Legal Bullets" column contained on several occasions inaccurate information regarding the law, there is no evidence in this case as to the substance of these inaccuracies. Therefore, the court cannot make a determination whether the plaintiff's advertising was false or

9

deceptive and thus not protected by the First Amendment's guarantees. It therefore must assume that the First Amendment applies to Mr. Butler's column and must determine whether the restrictions placed upon such advertisement by the Alabama Bar through its Rules of Professional Conduct are reasonable. The court again cannot make such a decision, however, because the defendants have not sufficiently argued this matter in their briefs. The law requires that the government have a substantial interest in regulating the speech and choose regulations that are narrowly tailored to serve that interest. The defendants have not articulated such an interest, however, nor have they discussed the manner in which the Rules are tailored to accomplish such a goal. *See Movants' Initial Submission* at 1-2 (unnumbered pages). While the court can imagine what some of those goals might be, it would be inappropriate for the court to engage in such speculation in a motion for summary judgment. Therefore, the motion of the Alabama Bar, the Huntsville-Madison Bar, Mr. Moss, Mr. Kendrick, and Mr. Norris to the extent that it seeks summary judgment on the plaintiff's First Amendment claim will be denied.

### B.     Fourth Amendment Claim.

Mr. Butler avers that all of the defendants violated his Fourth Amendment rights when they "illegally searched his office and seized private business documents." *Amended Complaint* at 5-6. He alleges that not only did the Alabama and Huntsville-Madison Bars use illegally seized information against him in their disciplinary investigations, but that Ms. Gaines used the information in trials in which she was the opposing attorney. *Id.* at 6. Specifically, he asserts that Heather Haring gave confidential

documents from his law offices to Ms. Gaines,[12] and that Mr. Blair and Ms. Haring were seen in his law offices after hours reviewing confidential client files.[13] *Opponent's Responsive Submission* at 4 (unnumbered pages). He claims that documents were later found to be missing from those files and were in the possession of the Alabama Bar.[14] *Id.* The plaintiff contends that all parties who allegedly seized documents from his office illegally did so under the express direction and with knowledge of the Alabama Bar. *Amended Complaint* at 7. Mr. Butler's complaint alleges, "During the course of the [disciplinary] investigation above listed actors/agents [Mr. Moss, Mr. Kendrick, Mr. Norris, and the Alabama Bar] instructed and solicited HEATHER HARING and JEAN PAGE (employees of J.L. Butler, Jr. and Associates) to steal, photocopy or otherwise reproduce confidential, private, personal and privileged information from the offices of JAMES L. BUTLER, JR. and ASSOCIATES. Further, they instructed and solicited NANCY GAINES and EDWARD BLAIR to do so as well. This is a typical method used by the ALABAMA STATE BAR ASSOCIATION during its investigations to uncover information." *Id.*

The United States Supreme Court has held that the Fourth Amendment proscribes only government actions and protects against illegal searches and seizures by private parties only "if the private part acted as an instrument or agent of the Government."

---

[12] Mr. Butler cites as evidence for this assertion Ms. Page's February 26, 1992, letter to Milton Moss and the affidavit of his sister, Julie Hill.

[13] The plaintiff cites as evidence for this assertion his own affidavit and that of Kathy Spears. He has mischaracterized the testimony of Ms. Spears, however, for she only states that she met Ms. Haring and Mr. Blair after hours "as they were coming up the hall from the filing room / kitchen." *Spears Affidavit.* She never contends that Ms. Haring and Mr. Blair were reviewing files or suggests that they were in the office at that time for any unlawful purpose.

[14] Again, Mr. Butler cites his own affidavit as support for this allegation.

11

*Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989). The Alabama Bar and the Huntsville-Madison Bar, pursuant to Rule 12(a)-(b) of the Alabama Rules of Disciplinary Procedure, exercise a governmental function during disciplinary investigations and hearings. *See Alabama State Bar v. Watson*, 272 So. 2d 240, 243 (Ala. 1972) ("The [Alabama Bar] Board of Commissioners, under our state law, exercises judicial functions."). Therefore, the Fourth Amendment applies to searches and seizures by the Alabama Bar and the Huntsville-Madison Bar when they are enforcing the disciplinary rules promulgated by the Alabama Supreme Court. It further applies to the actions of the private defendants if they acted as agents of either Bar.

There is no evidence other than the unsupported allegations of the plaintiff himself that any defendant in this matter unlawfully entered the law offices of Mr. Butler and illegally obtained information from his files. The defendants have presented numerous affidavits and deposition testimony that expressly deny any such unlawful conduct. *See Blair Affidavit, Gaines Affidavit, Haring Affidavit, Moss Affidavit*. While there is evidence to suggest that Mr. Blair and Ms. Haring were present in the plaintiff's offices after hours, the evidence shows that they were dating at that time, *see Page Letter of 2/26/92, Hill Affidavit*, and there is no evidence other than Mr. Butler's own conclusory affidavit that they were acting improperly while in the offices. Furthermore, while it may be true that the Alabama and Huntsville-Madison Bars received information from Mr. Butler's client files that was confidential, the evidence establishes that the source of this information was Ms. Haring and Ms. Page, the plaintiff's own employees. While these staff members may have violated an agreement with the plaintiff to maintain the attorney-client privilege, by giving

12

these employees access to confidential client files, Mr. Butler ran the risk that they would so act. This violation of confidence or the fact that the Bars used the information in prosecuting the grievances against Mr. Butler, however, does not mean that either Bar or its employees were responsible for the conduct.

Moreover, even if the evidence could be construed to give credence to the plaintiff's allegations of unlawful search and seizure, there is no evidence of agency. All of the affidavits presented by the defendants explicitly deny that either the Alabama Bar or the Huntsville-Madison Bar expressly or implicitly authorized Ms. Gaines, Mr. Blair, Ms. Haring, or Ms. Page to gather information in a lawful or unlawful manner in order to further the investigation of the plaintiff. The plaintiff contends that the March 18, 1992, letter from Mr. Moss to Ms. Page created an agency relationship; however, this letter is nothing other than a request for any information Ms. Page may have had about the Kristi Renee Dunavant grievance. Nothing in that letter can be construed to establish an agency relationship. Furthermore, Ms. Gaines, while admitting she was a member of the local grievance committee at the time, denies that she participated in the investigation of Mr. Butler's professional conduct or that she requested or instructed anyone to gather information from the plaintiff's law offices in that pursuit. There is no evidence aside from Mr. Butler's own affidavit to refute Ms. Gaines' testimony. As a result, the plaintiff cannot establish that any of the private actors were agents of either the Alabama Bar or the Huntsville-Madison Bar, and the protections of the Fourth Amendment do not apply to their actions. Thus, the motions for summary judgment to the extent that they seek dismissal of the Fourth Amendment claim will be granted.

**V. Conclusion.**

Accordingly, Mr. Butler's First Amendment claim remains viable, while his Fourth Amendment claim will be dismissed with prejudice. The motion for summary judgment of the Alabama Bar, the Huntsville-Madison Bar, Mr. Moss, Mr. Kendrick, and Mr. Norris will be granted in part and denied in part, while the motion for summary judgment of Ms. Gaines and Mr. Blair will be granted. The court will enter an appropriate order in conformity with this memorandum opinion.

Done, this 17th of January, 1997.

Edwin L. Nelson
United States District Judge