**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

FILED
97 FEB 13 AM 9:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **JAMES L. BUTLER, JR.,** | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-94-N-2046-NE |
| **JEAN PAGE, et al.,** | ] |
| Defendant(s). | ] |

**ENTERED**
FEB 13 1997

**Memorandum of Opinion**

**I.   Introduction.**

The plaintiff, James L. Butler, Jr. ("Mr. Butler") brought this action under 42 U.S.C. § 1983 for equitable relief against original defendants Nancy Gaines ("Ms. Gaines"),[1] Edward Blair ("Mr. Blair"),[2] Milton Moss ("Mr. Moss"),[3] Gilbert Kendrick ("Mr. Kendrick"),[4] Robert Norris ("Mr. Norris"),[5] the Alabama State Bar Association (the "Alabama Bar"), and the Huntsville-Madison County Bar Association (the "Huntsville-Madison Bar").[6] The

---

[1] Ms. Gaines is an attorney who allegedly assisted in the investigation of Mr. Butler's disciplinary matters.

[2] Mr. Blair is an attorney who allegedly assisted in the investigation of Mr. Butler's disciplinary matters.

[3] Mr. Moss is the Assistant General Counsel for the Alabama Bar.

[4] Mr. Kendrick is the Assistant General Counsel for the Alabama Bar.

[5] Mr. Norris is the General Counsel for the Alabama Bar.

[6] In his original and amended complaints, Mr. Butler asserted claims pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988 for damages and equitable relief against the above defendants and Heather Haring and Jean Page. He alleged that the defendants violated his Fourth, Fifth, and Fourteenth Amendment rights, that Mr. Moss, Mr. Kendrick, Mr. Norris, the Alabama Bar, and the Huntsville-Madison Bar violated his First and Seventh Amendment rights, that the defendants violated his rights under Alabama Constitution, Article I, Sections 5, 13, and 35, and that Mr. Moss, Mr. Kendrick, Mr. Norris, the Alabama Bar, and the Huntsville-Madison Bar violated his rights under Alabama Constitution, Article I, Sections 4, 10, 11, and 25. He further asserted state law claims and sought declaratory and injunctive relief as well as compensatory and punitive damages in the amount of $25 million. In

107

Alabama Bar, Mr. Moss, Mr. Norris, Mr. Kendrick, and the Huntsville-Madison Bar filed a supplemental motion for summary judgment on January 24, 1997. The motion has been briefed, and upon due consideration, the motion will be granted.

## II.  Discussion.[7]

Mr. Butler's "Legal Bullets" columns which were the subject of disciplinary proceedings were determined by the Huntsville-Madison Bar and the Alabama State Bar to be advertising. As such, they are subject to certain regulations established in the Alabama Rules of Professional Conduct (the "Rules"), formerly the Code of Professional Responsibility (the "Code"). According to Rule 7.2(e) of the Rules, formerly Disciplinary Rule 2-102(3) of the Code, "[n]o communication concerning a lawyer's services shall be published or broadcast, unless it contains the following language . . . : 'No representation is made that the quality of legal services to be performed is greater than the quality of legal services performed by other lawyers.'" Furthermore, Rule 7.2(b) of the Rules, formerly Disciplinary Rule 2-102(b) of the Code requires, among other things, that "a true copy or recording of any such advertisement shall be delivered or mailed to the Office of General Counsel of the Alabama State Bar at its then current headquarters within three (3) days after

---

an order entered on November 7, 1995, the court dismissed Mr. Butler's state constitutional and common law claims, his section 1985 and 1986 claims, his Fifth, Seventh, and Fourteenth Amendment claims pursuant to section 1983, his claims of bias in his disciplinary hearings, and his monetary claims against the Alabama Bar, the Huntsville-Madison Bar, and their agents. This left as the only viable allegations Mr. Butler's First and Fourth Amendment claims for injunctive and declaratory relief brought pursuant to section 1983. In an order entered on January 17, 1997, the court granted summary judgment on the Fourth Amendment claim, effectively dismissing Ms. Gaines and Mr. Blair as party defendants. Furthermore, the court dismissed Jean Page as a party defendant in an order entered on July 12, 1996, and dismissed Heather Haring as a party defendant in an order entered on August 28, 1996.

[7] For a discussion of the undisputed facts for summary judgment purposes, see the court's Memorandum of Opinion entered on January 17, 1997.

2

the date on which any such advertisement is first disseminated." Because Mr. Butler failed to comply with these requirements, he was disciplined by the Bars.

### A. Are the "Legal Bullets" Columns Advertising?

The Huntsville-Madison and Alabama State Bars determined that the "Legal Bullets" columns which were the subject of the disciplinary proceedings against Mr. Butler were advertisements for Mr. Butler's law practice. The defendants made this determination based upon each column's prominent display of Mr. Butler's law firm name, telephone number, and photograph, the inclusion of "an irrelevant and often irreverent quip" underneath a bold caption "Butler's Law," and each column's reference to a specific legal subject. *Defendants' Supplemental Memorandum* at 5. Mr. Butler, on the other hand, asserts that the columns were not advertisements but rather were public service announcements. As support for his contention that the columns never purported to be a communication about a service performed by J. L. Butler and Associates, he states that approximately 65 percent of his columns "concerned areas of law outside the scope of the practice of J. L. Butler." *Plaintiff's Response* at 2-3.

Regardless of the fact that Mr. Butler claims his "Legal Bullets" columns were designed to provide a public service to the general public, the fact remains that he paid a fee to the newspaper in order to publish the columns, and he included in the column his firm name, phone number, and a picture of himself. Moreover, even if 65 percent of the columns did not concern areas of law within the scope of Mr. Butler's practice, 35 percent of them did address areas in which he claimed some expertise. A business enterprise can act both in the public interest and its own interest simultaneously. In fact, the court is of

3

the opinion that many businesses who act in the public's service are simultaneously hoping to gain at least good will from such action. Business enterprises sponsor public events such as marathons, walkathons, and telethons on practically a daily basis. By doing so, they support a presumably good cause while gaining name recognition and good will in both the business and private communities and possibly generating some new business as well. By paying a fee to run a regular newspaper column, Mr. Butler was acting in the same manner. Accordingly, the "Legal Bullets" columns in question were advertisements and as such were subject to the restrictions on attorney advertising set out in the Rules.

### B. Do the Restrictions on Attorney Advertising Violate the First Amendment?

"The States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading, . . . or that proposes an illegal transaction, . . . . Commercial speech that is not false or deceptive and does not concern unlawful activities, however, may be restricted only in the service of a substantial governmental interest, and only through means that directly advance that interest." *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 638 (1985) (citations omitted). A restriction on commercial speech that does not concern unlawful activity and is not misleading is permissible if the government: (1) asserts a substantial interest in support of its regulation; (2) establishes that the restriction directly and materially advances that interest; and (3) demonstrates that the regulation is narrowly drawn. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 564 (1980).

4

### 1. *Central Hudson* Three-Pronged Test.

The first prong of the *Central Hudson* test requires that the state assert a substantial governmental interest to support its regulations on attorney advertisement. In their brief, the defendants declare that the state of Alabama's substantial interest in regulating the time, place, and manner of attorney advertising is "based upon the state's interest in protecting the public from overreaching or deceptive attorney advertising, in curbing activities that negatively affect the administration of justice, and in prescribing broad standards for licensing and regulation of the practice of law." *Defendants' Supplemental Memorandum* at 5-6.

A single substantial interest is sufficient to satisfy the first prong of the *Central Hudson* analysis. *See Rubin v. Coors Brewing Co.*, 115 S. Ct. 1585, 1590-91 (1995) (deeming only one of the government's proffered interests "substantial"). In *Florida Bar v. Went For It, Inc.*, the Supreme Court observed that "'[s]tates have a compelling interest in the practice of professions within their boundaries, and . . . as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions.'" 115 S. Ct. 2371, 2376 (1995) (quoting *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975)). *See also Edenfield v. Fane*, 507 U.S. 761, 769 (1993) (interest in ensuring the accuracy of commercial information in the marketplace is substantial). Therefore, the state of Alabama has a substantial interest both in protecting the public from false or deceptive attorney advertising and in prescribing standards for the regulation of the practice of law.

Accordingly, the defendants have met their burden under the first prong of the *Central Hudson* test.

The second prong of the *Central Hudson* test requires the defendants to demonstrate that the challenged regulations "advance[ ] the Government's interest in a direct and material way." *Rubin*, 115 S. Ct. at 1588 (quoting *Edenfield*, 507 U.S. at 771). The Supreme Court has explained that this burden "'is not satisfied by mere speculation and conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.'" *Rubin*, 115 S. Ct. at 1592 (quoting *Edenfield*, 507 U.S. at 770-71).

The defendants fail to meet their burden under this prong of the test, however. The law requires that to do so, they must present evidence in the form of studies, anecdotal evidence, or even Mr. Butler's own conduct which tends to show that the restrictions upon attorney advertising imposed by the Rules alleviate the risks of an attorney presenting false, deceptive, or misleading information to the public. *See, e.g., Edenfield*, 507 U.S. at 771; *Florida Bar*, 115 S. Ct. 2371 at 2377-78. This the defendants have not done. They have merely asserted without any supporting justification that the disclaimer required to be inserted in attorney advertising by Rule 7.2(e) of the Rules "curbs 'puffing' by lawyers and helps the general public to avoid the confusion associated with comparison of the availability of the infinite types of legal services." *Defendants' Supplemental Memorandum* at 6. Furthermore, they aver that Rule 7.2(b)'s requirement that attorneys submit a copy of any advertisement to the Alabama State Bar within three days after the information is first

6

disseminated is intended "to provide a means of oversight and enforcement of other rules." They do not, however, demonstrate with any evidence that such regulations actually accomplish the substantial governmental interest of protecting the public from false or deceptive advertising.

### 2.  Are the "Legal Bullets" Columns False, Deceptive, or Misleading?

Thus, for the defendants to prevail on their motion for summary judgment, they must demonstrate that Mr. Butler's "Legal Bullets" columns for which he was disciplined were in fact false, deceptive, or misleading. As such, the columns would not be afforded protection by the First Amendment. The defendants assert that these four columns were false and/or misleading in that they contained incorrect representations of Alabama law.

First, the defendants state that the column entitled "Liquor Laws" incorrectly states that the legal drinking age of 21 years only applies if alcoholic beverages are used in a wet county. *Defendants' Supplemental Memorandum* at 2-3. Mr. Butler has misrepresented the law in this case. According to Alabama law, it is "unlawful for a person less than 21 years of age to purchase, consume, possess or to transport any alcohol, liquor or malt or brewed beverages *within the state of Alabama."* Ala. Code § 28-1-5 (1985) (emphasis added).

Second, the defendants aver that the column entitled "DUI" informed the public regarding breath tests in direct contradiction of Alabama law. *Defendants' Supplemental Memorandum* at 3. The column states that "[i]f you request an alternative form of testing after submitting to a breath test, the police must allow reasonable opportunity to let you get

7

such a test or the breath test is not admissible." *Defendants' Supplemental Exhibit S-3.* Mr. Butler has again misrepresented Alabama law, however. The law does not render the original breath test inadmissible if the police fail to allow a defendant reasonable opportunity to obtain an alternative form of testing. Rather, the result is that the police would have denied the defendant due process of law, for which the defendant would have redress. *See Bilbrey v. State*, 531 So. 2d 27, 29-30 (Ala. Crim. App. 1987) (no due process violation when defendant allowed access to a telephone to arrange an independent breath test).

In the third column, entitled "Highway Maintenance," the defendants admit that the majority of the information Mr. Butler offers is correct. *Defendants' Supplemental Memorandum* at 3. Mr. Butler states that "governmental entities can usually be sued for negligence in the construction and maintenance of roads." *Defendants' Supplemental Exhibit S-4.* Such a statement is true according to Alabama law, for statutory authority to sue counties and municipalities is found in sections 11-1-2 and 11-47-190 of the Code of Alabama. However, the state government has immunity from suit pursuant to section 14 of the Alabama Constitution of 1901. Therefore, Mr. Butler's statement is misleading.

In the fourth column at issue, entitled "Wrongful Death," Mr. Butler asserts that a plaintiff in a wrongful death action can recover damages for loss of support and loss of consortium. *Defendants' Supplemental Exhibit S-5.* In fact, however, according to Alabama case law, the statutory provisions allowing action for wrongful death, sections 6-5-391 and 6-5-410 of the Code of Alabama, provide only for the recovery of punitive damages and not compensatory damages. *See Adkison v. Adkison*, 239 So. 2d 555 (Ala. Civ. App.),

8

*rev'd on other grounds*, 239 So. 2d 562 (1970) (purpose of statute is to punish for wrongful death and to deter).

In Mr. Butler's responsive submission, he admits that three of the four columns at issue contain incorrect information. *Plaintiff's Response* at 3-7. He incorrectly asserts that his "DUI" column is a fair representation of Alabama law, but it is not. *Id.* at 7. He claims, however, that the intent of the Bar's restrictions on attorney advertising is to prevent purposeful fraud on the part of an attorney, and that since any misrepresentations he may have made were inadvertent, he should not have been disciplined. *Id.* Mr. Butler's assertion is not supported by the evidence, however, nor has the Alabama State Bar ever made such a statement. According to the defendant, the intent of these restrictions is to protect the public from false, misleading, or deceptive attorney communication, regardless of whether the misinformation is conveyed intentionally or accidentally. Moreover, according to the Supreme Court, such commercial speech is not afforded First Amendment protection, regardless of intent or lack thereof.

Accordingly, the court finds that, while Mr. Butler's mistakes may have been inadvertent and due to a lack of knowledge of the law, such ignorance does not mean that he can continue to convey incorrect legal information to the citizens of the state of Alabama. His commercial speech in the form of the four "Legal Bullets" columns at issue contained false and misleading information and as such is not protected by the guarantees of the First Amendment. The defendants therefore did not violate Mr. Butler's First Amendment rights when they disciplined him for such conduct, and their motion for summary judgment will be granted.

9

### III. Conclusion.

The defendants' motion for summary judgment will be granted, and all of the plaintiff's remaining claims will be dismissed. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this 13th of February, 1997.

Edwin L. Nelson
United States District Judge